## NEWBERRY *v.* BOYNE CITY TANNING CO.

1. MASTER AND SERVANT—INSTRUCTIONS—OBVIOUS DANGER.

Every normal, mature man must employ his senses in self-protection whenever there may be reasonable cause to apprehend danger, and must do all that an ordinarily prudent man ought to do under the circumstances, and while it is the master's duty to instruct a servant as to risks which may not be discovered in the exercise of ordinary caution, obvious risks or dangers are assumed by the servant.[1]

2. SAME—CONTRIBUTORY NEGLIGENCE—OBVIOUS RISKS.

Where plaintiff was familiar with woodworking machinery as a result of long experience, and knew that adjustments of the machine he was using were required to be different for hard than for soft wood, he could not recover for injuries sustained in attempting to plane a piece of hard wood, without examining the adjustments of the

[1] As to the master's duty to warn or instruct servant, generally, see note in 44 L. R. A. 33. And as to the duty of a master to adopt rules to protect servant, or to warn him, against dangers not reasonably to be apprehended, see note in 21 L. R. A. (N. S.) 89.

On the question of assumption of obvious risks of hazardous employment, see note in 1 L. R. A. (N. S.) 272.

planer, which were not in condition for the work he was attempting to perform, causing the piece to fly back and force plaintiff's hand on the knives.

Error to Otsego; Sharpe, J. Submitted October 9, 1912. (Docket No. 18.) Decided July 18, 1913.

Case by Stephen Newberry against the Boyne City Tanning Company for personal injuries. Judgment for plaintiff, and defendant brings error. Reversed without a new trial.

*J. E. Converse,* for appellant.

*Hall & De Foe,* for appellee.

McALVAY, J. This case was brought by plaintiff against defendant, a Michigan corporation, to recover damages for personal injuries received while in its employ as a carpenter, which injuries were claimed to have been caused by the negligence of defendant, its officers, and agents.

Plaintiff was 56 years of age and a carpenter by trade, at which he had worked 25 or 30 years. He was first employed in August, 1909, by defendant company piling tanbark, at which work he continued for three weeks. When it became known that he was a carpenter he was employed as such in and about the plant. The defendant company, among its various departments, maintained a machine shop, containing many machines for the use of its employees for doing such rebuilding and repair work as might be necessary. In this machine shop is a buzz planer or jointer of the ordinary standard type. This is a heavy machine made of metal 2 feet 10 inches high, with a table or top which is divided into two parts, known as "head board" and "tail board." These two parts are each 22 inches in width and 4 feet long. Between and under them revolves upon a shaft a cylinder head

4 or 5 inches square, which carries two knives running the entire width of the table, and which are adjusted by the use of set screws and can be taken out. The two tables are also adjustable. The head table, being the one nearest the operator, is adjusted by the use of a crank screw, which is used for the purpose of raising or lowering this half of the table and regulating the depth of the desired cut or thickness of the shaving to be taken off from the wood to be planed or jointed. The tail board, or back half of the table, can also be adjusted by a jamb screw, and should be kept level with the machine knives. It is used only for the purpose of supporting the material being put through the machine which has passed over the knives. To operate this machine properly the head table should be adjusted to the thickness of the cut desired, and the material to be planed is then put upon the head table and passed over the knives in the cylinder head, which revolves toward the operator at great speed, planing the underside of the board or other piece of wood which is being put through the machine.

The machine in question had no regular operator employed by defendant. It was used by the mechanics about the plant whenever they had any work requiring its use. In the course of his work as a carpenter plaintiff was required to use this buzz planer, and had used it from October 1, 1909, on the average of once each day up to January 3, 1910, when this injury occurred. On this day he was directed by the master mechanic of defendant company to make certain wedges for use in the tannery 20 inches long, 7 inches wide, and 3 inches thick at one end, tapering down to ½ or ¾ inch at the other, the wedge part to be on the flat side of the stick. For this purpose plaintiff procured a well-seasoned piece of hard maple, cut it into proper lengths for his wedges, and went to this machine and started it in motion. He placed one of the pieces on the head table of the planer, putting his

left hand on the front end of the stick and his right hand on the back end, and shoved it onto the planer knives. About 6 or 8 inches of the block had passed over the knives when it was suddenly forced back, causing plaintiff's left hand to drop onto the knives of the planer, which cut out the palm of his hand. An examination made directly after this injury by two fellow employees of the plaintiff showed that the tail board of the machine was not level with the cut of the knife, but was about 1/16 of an inch lower than it should have been. They also found that one of the two knives was out of alignment with the other, that it had been driven down on the set screw, so that one end was 1/16 of an inch low, making the other end 1/16 of an inch high.

At the close of plaintiff's case defendant moved the court for a directed verdict on the ground that it was not shown that defendant was guilty of any negligence, and it appeared that the plaintiff was guilty of contributory negligence. This motion was denied. Defendant offered no evidence in the case. The case was submitted to the jury, which returned a verdict in favor of plaintiff, upon which a judgment was duly entered. The case is here upon a writ of error, and the error relied upon by the defendant is that the court should have instructed a verdict in its favor.

It appears from the record that it had been the practice for a long time in the machine shop for the employees of defendant who had occasion to use this machine to adjust it as might be necessary to the requirements of the work each was about to do upon it, and it also appears that the want of adjustment found by the men who examined the machine after plaintiff's injury would render it more dangerous in causing pieces of wood being put through to fly back. Both of these matters are eliminated from the case, and the only negligence charged and relied upon by

plaintiff is the neglect of defendant to warn and instruct plaintiff when he was first put to work on this machine, as appears from the following statement in plaintiff's brief:

"Defendant is in error in stating in its brief that one of the grounds of negligence relied upon by plaintiff was that this machine was defective (Brief p. 7). There was no claim that the machine was defective any more than it was out of adjustment at the time of plaintiff's injury, and the lack of adjustment was not relied upon as a ground of actionable negligence. The case was tried and submitted on the theory that the plaintiff was a man without experience with or knowledge of such a machine, and that he was ordered to use this planer without being instructed as to the proper method of operating or adjusting it, and without warning of the dangers attendant upon its use in the manner in which it was then operated by the employees of defendant."

This, then, is the sole question to be determined in this case.

The record shows that the blacksmith shop, the carpenter shop, and machine shop were all in this building. The carpenter shop was in the end of the building next to the machine shop, and the bench upon which plaintiff worked in the shop was within 6 feet of this buzz planer, which was always in full view from his bench, and when his work required its use he could step to it readily. Plaintiff was a mature man in the full possession of all his faculties, and from his testimony appears to be of ordinary intelligence. During practically his entire manhood he had worked as a carpenter, principally engaged in building houses, and had been familiar with the use of tools in working wood by hand. He testified that he had not been familiar with the use of machinery before entering defendant's shop. The record shows that plaintiff had used other machines in the shop; that he had used this machine on the average of once

a day for the three months before his injury, and had planed on it different kinds of wood, both soft and hard, which required different thicknesses of cut, and knew that the knives would kick back; that on the morning in question he made no examination of the machine before he began to operate it to determine whether it was properly adjusted for the work he was about to do; that he understood the machine was a dangerous one, and could have discovered for himself whether it was out of alignment; that he was warned not to use any machine if it was out of repair in any way, and that such a condition was to be reported, so that the machinists might make the necessary repairs and adjustments.

The foregoing, taken from plaintiff's testimony in the case, discloses his knowledge of and acquaintance with this machine on the day of his injury. Every normal, mature man is supposed to use his senses in self-protection whenever there may be reasonable cause to apprehend danger. He must do all that any ordinarily prudent man ought to do under any given circumstances. Baldwin on Personal Injuries (2d Ed.), § 134.

The rule is that it is the master's duty to instruct a servant as to risks which he will not discover by the exercise of ordinary care, but when the servant is a mature man he assumes such risks as arise from obvious dangers. Baldwin on Personal Injuries (2d Ed.), § 347.

It is apparent from the record that from the lifetime experience of plaintiff he was perfectly familiar with woodworking and the difference between hard and soft woods as to the necessity of adjusting the cut of the shavings, and that from his continued use of this machine he knew that the adjustments necessary for doing the work depended upon the character of the material used at the time. On the day of his injury, his testimony shows he made no examination

of the adjustments of the machine, and did not use the care of an ordinarily prudent man under like circumstances. Whatever dangers there were about this machine were obvious and could have been discovered by plaintiff by the use of the care exercised by an ordinarily prudent man. These rules of law are so fundamental and have been so often announced by this court that citations are unnecessary.

The injury was the result of his own negligence, and not caused by reason of the want of instructions by defendant at the time he was employed to operate it how to operate and adjust the machine. We conclude, therefore, as a matter of law, that the trial court was in error in denying defendant's motion for a directed verdict.

The judgment of the circuit court is reversed, and judgment will be entered in this court for defendant.

STEERE, C. J., and MOORE, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.